In re Proceedings for Approval of Ordinance of the city of Chester annexing certain lands in the township of Chester to the city of Chester. Appeals of Otto Walther and of Martha S. Knowles, Executrix, etc., of Joshua P. Eyre, deceased.

*Municipalities—Annexation of land to city—Definition of " taxable."*

A taxable is one who possesses all the qualifications necessary to authorize the proper taxing authorities to assess him with a tax. The assessor's list is the best and readiest evidence of this liability to be taxed, just as the registry list is the best and readiest evidence of the right of a citizen to vote; but neither the assessment roll nor the registry list is conclusive upon the subject to which it relates.

If a taxable or a voter be overlooked by the enrolling officer, the right to vote or the liability to be taxed may be shown by other evidence.

*Municipalities—Annexation of territory—Defective draft.*

An indescriptive draft accompanying a petition for the annexation of territory to a city may be replaced by an accurate one, by amendment regularly allowed by the court of quarter sessions, without referring the proceedings back to councils for correction.

Argued Feb. 11, 1896. Appeal No. 484, Jan. T., 1896, by Otto Walther et al., from order of Q. S. Delaware Co., dismissing exceptions to master's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for annexation of territory to the city of Chester. Before CLAYTON, J.

From the record it appeared that the draft accompanying the petition was indescriptive of the land proposed to be annexed. The case was referred to J. N. Shanafelt, Esq., as master, who filed a report recommending a decree in accordance with the prayer of the petition. The master's report was confirmed. Before the final decree was entered the record was amended by filing an accurate description of the land.

Objection was made that some of the persons who signed the petition were not taxables; upon this subject the master found as follows:

Who are the taxables? Who pay taxes in this part of the township? We have:

1st. Those who pay or should pay taxes on land and reside in the section.

2d. Those who pay or should pay a school tax not owning land.

3d. Those who pay or should pay a county tax not owning land and reside in the section.

4th. Those who pay or should pay a state tax whether land-owners or not, who reside in the section.

The fact that these petitioners lived at the time they signed this petition in this section of the township, and were all of age and voters, most of them being on the registry list, made them taxable inhabitants; whether they paid taxes or not made no difference, as they were subject to and liable for a tax. To say that they are not is to say that a real estate owner who does not pay his taxes on his land is not a taxable inhabitant. The collector could by not collecting the taxes make every citizen in the township a noninhabitant, a power too extensive to be thought of.

The petition was signed by eighteen persons. Of these we find on the assessment made in the fall of 1893 : Joseph H. Waddell, T. K. Gartside, Thomas Lambert, William Weaver, N. J. Robinson, Joseph P. Moore, John Burk, Lewis J. Moore, David Moore, John Moore, Lewis Thomas, Patrick Green and John Watterson; in number, thirteen. All of these were proved to have lived in that section in March, 1893.

The following four persons, while not shown in assessment, were proved to be living there in March of 1893, as follows:

Henry Cheeseman. John Flower testified that he was a resident, and he himself testified the same.

James J. Moore. Was of age; had voted. John Flower testified he was a resident there; subpœna was served on him.

H. H. Hoskins. Subpœna was served on him; his name is on the registry list and S. J. Cochran testified he was a resident.

George Sharron. His name is on the registry list, and J. Harvey testified he was a resident there.

This makes seventeen persons proved to have lived in the section who signed petitions in regard to whom there can be no doubt as to their right to be termed "taxable inhabitants." The remaining person, J. C. Madden, there is some doubt about. The best evidence produced to prove him a resident is that of Job Wheaton. Wheaton served a subpœna on him at 1104 Kerlin street, and Malden told him he lived there and had signed the petition. This, with his name on the petition, without the exceptant proving he was not a resident, must be taken as proof that he was such and he should be counted. This makes eighteen persons signing. This number is three fifths of thirty, and it must be shown that there were thirty-one "taxable inhabitants" in the section in March, 1893, to defeat the petition.

In addition to the above eighteen the exceptants have proved the following residents: James Clayton, John M. Clayton, Thomas Emory, Henry Simpers, Isaac Cooper, Thomas Clayton, J. N. Shields, Stephen Cheeseman, or Chrisman, and D. or T. Christy, or nine in all, making twenty-seven residents.

Mr. J. Harvey testified that Wm. Hannum, whom they attempt to prove a resident, lived at Maddux, out of the section.

David Chrisman, whom they prove as on the registry list, with Stephen Cheeseman, his son, must be the same as A. Cheeseman, as it was shown they lived in the Pennell house. Cheeseman said he had lived there two years and David Harvey said there were two Cheesemans. Now only one Cheeseman appears in this case, and the only testimony as to any Chrismans was that of the registry book. Neither Harvey nor Flower speak of them, while every one knew the Cheesemans. And it is not likely that both families lived in the Pennell house at the same time.

Your master would therefore recommend that a decree be

entered by the said court annexing the said part of Chester township to the city of Chester as set out in the petition hereto annexed and the accompanying plan.

*Errors assigned* were decree in dismissing exceptions to the master's report, and decree permitting amendment.

*O. B. Dickinson,* for appellants.—The master's definition of "taxable" was incorrect. In its widest scope it includes only those who are liable to a tax, or in other words, those to whom a tax has been assessed: Act of April 15, 1834, P. L. 512.

No borough, however insignificant, can be incorporated unless an accurate description of its territorial limits is made a matter of record.

*A. A. Cochran,* city solicitor, for appellee.—The assessor's list is not conclusive as to who are taxables: Act of July 2, 1839, P. L. 519; Act of January 30, 1874, P. L. 31.

The findings of facts by the master and the decree of the court of quarter sessions confirming the same, should be taken as conclusive and not disturbed unless illegality in the proceedings appears: Ellis et al.'s App., 37 W. N. C. 204.

PER CURIAM, March 2, 1896:

The draft accompanying the petition for the annexation of part of Chester township to the city of Chester was indescriptive. Councils should have required a new one to be prepared giving an intelligible description of the land to be annexed. It has however been replaced by an accurately descriptive one by amendment regularly allowed by the court below. It is now sufficient.

The other question is one of definition. Who is a taxable inhabitant? Clearly, a taxable is one who is, or who may lawfully be, taxed. One who possesses all the qualifications necessary to authorize the proper taxing authorities to assess him with a tax. The assessor's list is the best and readiest evidence of this liability to be taxed, just as the registry list is the best and readiest evidence of the right of a citizen to vote. But neither the assessment roll nor the registry list is conclusive upon the subject to which it relates. A taxable or a voter may

be overlooked by the enrolling officer. In that event, the fact of the right to vote or of the liability to be taxed may be shown by other evidence. The record discloses no sufficient error to justify the reversal of this judgment and it is now affirmed.