In re: Petition to Establish an INDEPENDENT SCHOOL DISTRICT FOR PROPERTY SITUATE IN JEFFERSON TOWNSHIP, Somerset County, For Purposes of Transfer to an Adjacent School District.

Appeal of: Petition to Establish an Independent School District, Independent School District, Seven Springs Mountain Resort, Gary D. Gadley, Matthew Tarosky, William J. Lloyd, James A. Nassif, Robert M. Hernandez, Georgia C. Hernandez, Mary Jo Ochson, David A. Tonnies, Susan A. Jurik, Kurt J. Lesker, III, Michael A. Morris, Erin Morris, Mark J. Hileman, Rebecca Hileman, Annette D. Ganassi, Nancy J. Bonati, Joseph E. Archer, James P. Wilhelm, Paige M. Wilhelm, David P. Mendis, Lisa B. Mendis, David A. Fetchko, Mary Ellen Fetchko, Ross F. DiMarco, Jr., Candace DiMarco, Netco, Inc., Wilson J. Farmerie, Karen A. Farmerie, Virginia's Pheasant Run, LP, Paul V. Cunningham, Deborah A. Cunningham.

Commonwealth Court of Pennsylvania.

Argued June 17, 2013.
Decided Aug. 9, 2013.

Robert I. Boose, II, Somerset, for appellants.

Benjamin A. Carroll, Somerset, for appellee Somerset Area School District.

BEFORE: LEAVITT, Judge, COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Petitioners own 22 contiguous parcels of real property in Jefferson Township that are located in the Somerset Area School District. They have filed a petition to establish an independent school district for purposes of transferring their properties to the Rockwood Area School District. The trial court dismissed their petition because it concluded that most of those signing it were not eligible to do so. They all owned property and paid taxes to the Somerset Area School District. However, they were not all legally domiciled at their Jefferson Township properties, and some were corporations, not individuals. Concluding that the trial court erred in concluding that a "taxable inhabitant," as used in the Public School Code of 1949,[1] must be a human being who permanently resides in the proposed independent school district to participate in a transfer proceeding, we reverse and remand for further proceedings.

◼ We begin our review with the applicable statute for establishing an independent school district, which is the first step in the statutory process for transferring real property from one school district to another. Section 242.1(a)[2] sets forth the procedure for creation of an independent school district and states, in relevant part, as follows:

---

**1.** Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702.

**2.** Section 242.1 was added by the Act of June 23, 1965, P.L. 139.

(a) A *majority of the taxable inhabitants of any contiguous territory* in any school district or school districts, as herein established, may present their petition to the court of common pleas of the county in which each contiguous territory, or a greater part thereof, is situated, asking that the territory be established as an independent district for the sole purpose of *transfer to an adjacent school district contiguous thereto....* Such petitions shall set forth a proper description of the boundaries of the territory to be included in such proposed independent district, and the reasons of the petitioners for requesting such transfer to another school district and the name of the district into which its territory is proposed to be placed.

The court shall hold hearing thereon, of which hearing the school district or districts out of whose territory such proposed independent district is to be taken and the school district into which the territory is proposed to be assigned, shall each have ten days notice.

24 P.S. § 2–242.1(a) (emphasis added). At the hearing, the trial court must determine four things:

1.  the precise boundaries of the proposed independent school district;

2.  that a majority of "taxable inhabitants" in the "contiguous territory" have, in fact, signed the petition;

3.  that the petitioners have listed reasons for the transfer; and

4.  that the petition names the school district into which the territory is proposed to be transferred.

*In re: Petition for Formation of Independent School District, Appeal of Riegelsville Tax and Education Coalition,* 17 A.3d 977, 981 (Pa.Cmwlth.2011) (*Riegelsville*).

The trial court's role is strictly a procedural one. It does not inquire into the reasons for the transfer given by the petitioners or rule on their merit. *In re Establishment of Independent School District Consisting of the Borough of Wheatland,* 846 A.2d 771, 773 n. 2 (Pa.Cmwlth. 2004) (*Borough of Wheatland I*). That is the job of the Department of Education.[3] A petition filed under Section 242.1(a) enjoys a rebuttable presumption that the signatures on the petition represent a majority of the taxable inhabitants. *Id.* at 775. It is the challenger's burden to prove otherwise. This Court has explained that a challenger may satisfy that burden as follows:

(1) proof that the petition lacks the pleading requirements set forth in Section 242.1(a); (2) proof that the signatures on the petition are invalid; (3) *proof that signatories on the petition are not taxable inhabitants of the area in question;* or (4) proof that there is a lack of a majority of taxable inhabitants on the petition.

*Id.* (footnote omitted) (emphasis added). Where the challenger meets its burden of proof in one of the above-listed ways, the trial court will deny the application.

On the other hand, if the trial court approves the petition, the transfer is by no means assured. At that point, the trial court forwards the petition to the Secretary of Education to evaluate the "merits

---

**3.** Section 242.1(a) of the Public School Code states, in relevant part, as follows:

In all cases where an independent district is proposed for transfer from one school district to another, the merits of the petition for its creation, from an educational standpoint, shall be passed upon by the [Secretary of Education] and the petition shall not be granted by the court unless approved by him. The court of common pleas shall secure the reaction from the [Secretary of Education] *upon receipt of the petition properly filed.*

24 P.S. § 2–242.1(a) (emphasis added).

of the petition ... from an educational standpoint." 24 P.S. § 2–242.1(a). If the Secretary determines that the petition does not have merit, the trial court must deny the petition. *Riegelsville*, 17 A.3d at 981–82. If the Secretary determines that the petition has merit, the trial court will order the establishment of an independent school district and forward the matter to the State Board of Education for a final review. *Id.* at 982.

▪ Here, the parties have stipulated to the relevant facts. The proposed independent school district consists of 39 contiguous parcels of real property in Jefferson Township that are currently assigned to the Somerset Area School District. In June 2012, the owners of 22 parcels of real property in the proposed independent school district (Property Owners) filed a petition to establish an independent school district to effect a transfer to the Rockwood Area School District. Property Owners attached a tax map identifying the contiguous territory in question and listed six reasons why they wished to become part of Rockwood Area School District.[4]

All 39 parcels of property located in the proposed independent school district are listed with the Somerset County Assessment Office by tax reference number and by tax map number. Some of the parcels are owned by a corporation, as opposed to an individual; are not improved by a house; or are used as second homes. All 39 property owners pay real estate taxes to Somerset County, Jefferson Township and the Somerset Area School District. However, only two of those signing the petition, Robert M. Hernandez and An-

nette D. Ganassi, have established their permanent residency in the proposed independent school district. Both are registered to vote at their properties, and they pay earned income tax and per capita tax to the Somerset Area School District. There are no students residing in the proposed independent school district who are enrolled in the Somerset Area School District.

The Somerset Area School District objected to the petition, asserting that only two of the Property Owners were "taxable inhabitants" who actually reside permanently in the proposed independent school district. Property Owners responded that permanent residency is not necessary in order to participate in the establishment of an independent school district. The parties stipulated that the only issue before the trial court was the meaning of "taxable inhabitant." In all other respects, they agreed that Property Owners' petition satisfied the criteria in Section 242.1(a). The parties created the evidentiary record on stipulated facts and then presented oral argument to the trial court.

The trial court found in favor of Somerset Area School District on the meaning of "taxable inhabitant." Noting that there is no definition of "taxable inhabitants" in the Public School Code, the trial court reasoned that the word "taxable" merely modified the word "inhabitants," the dominant word. It interpreted "inhabitants" to exclude those taxpayers who are not legally domiciled at the property listed in the petition or taxpayers, such as corporations, who are not human beings. This was sup-

---

4. The reasons were: (1) the territory is closer to the Rockwood Area School District schools by at least six miles; (2) the property in the territory owned by Seven Springs Farm, Inc. is the only portion of that entity's property not already located in Rockwood; (3) the lots in a development known as Pheasant Run are cur-

rently divided between Somerset Area School District and Rockwood; (4) Rockwood has a better teacher to student ratio; (5) Rockwood offers superior educational opportunities; and (6) Rockwood has lower tax millage. Reproduced Record at 5a–6a.

ported, the trial court reasoned, by other provisions of the Public School Code that refer to "resident or inhabitant" interchangeably.[5] Accordingly, the trial court concluded that a taxable inhabitant:

> is only an individual property owner, residing within the proposed "contiguous territory" at the time the Petition is filed and personally subject to tax within the district.

Trial Court Opinion at 8. Only two of those signing the petition met these requirements and, thus, qualified as taxable inhabitants.

This meant that 100 percent of the "taxable inhabitants" in the proposed independent school district signed the petition, well above the mere majority required by the statute. The trial court acknowledged that two taxable inhabitants could establish an independent school district but only for their two parcels and other parcels in the proposed independent district that were contiguous to the taxable inhabitants' properties. However, because the parcels of the two taxable inhabitants were not adjacent to Rockwood Area School District, their petition did not satisfy Section 242.1(a), which provides that an independent school district may transfer only to "an adjacent school district contiguous thereto."

▇ Based on these conclusions, the trial court dismissed Property Owners' petition to establish an independent school district. The present appeal followed.[6]

Property Owners raise two issues for our consideration. First, they argue that the trial court erred in concluding that a "taxable inhabitant" is one who permanently resides in the proposed independent school district. Second, they argue that the trial court erred in concluding that the two taxable inhabitants, who constitute the majority of property owners in the proposed independent district, had to own property that itself is contiguous to Rockwood Area School District in order to file a petition.

We begin with Property Owners' argument that the trial court erred in concluding that one must establish permanent residency in the proposed independent school district to be eligible to sign a petition for formation of an independent school district. Property Owners contend that the trial court's narrow construction of "taxable inhabitant" in Section 242.1 of the Public School Code is not consistent with the legislature's intent. Property Owners posit that the term refers to a person

---

**5.** Section 675 of the Public School Code (involving second class districts) states that in order to levy and assess school taxes, the designated official must furnish the school district with

> a properly certified duplicate of the last adjusted valuation of all real estate, personal property, and a list of all residents or inhabitants made taxable.... All of such real estate, personal property, and *residents or inhabitants* are hereby made taxable for school purposes in each such school district of the second class.

24 P.S. § 6–675 (emphasis added). Section 677 (involving third and fourth class districts) contains the same requirement. Section 679 of the Public School Code specifies that in-

habitants must pay a per capita tax, as follows:

> Each *resident or inhabitant*, over eighteen years of age, in every school district of the second, third and fourth class, which shall levy such tax, shall annually pay, for the use of the school district in which he or she is a resident or inhabitant, a per capita tax of not less than one dollar nor more than five dollars, as may be assessed by the local school district.

24 P.S. § 6–679 (emphasis added).

**6.** This Court's review consists of whether the trial court committed an error of law or abused its discretion. *Borough of Wheatland I*, 846 A.2d at 774 n. 7.

listed on the county's assessment rolls as having liability for real property taxes. In support, Property Owners cite *Borough of Wheatland I*, 846 A.2d 771.

In *Borough of Wheatland I*, the trial court dismissed a petition for the creation of an independent school district because the petitioners had not proved that the signatures were valid. This Court held that the trial court erred because petitioners enjoyed a presumption that the signatures were valid and represented a majority of the taxable inhabitants in the proposed district. The trial court failed to give effect to the presumption and to place the burden on the challenger to prove the signatures were not valid. In *Wheatland I*, we observed that

> "taxable inhabitant" is not defined anywhere in the Public School Code.

*Id.* at 775 n. 10. However, we noted that the Supreme Court provided the definitive interpretation of "taxable inhabitant" over "100 years ago" in another annexation case. *Id.* That case was *In re Annexation of Chester Township*, 174 Pa. 177, 34 A. 457 (1896).

*Annexation of Chester Township* construed Article III, Section 1 of the Act of May 23, 1889, P.L. 277, which provided for the annexation of a borough or township by a city of the third class. Under the applicable statute, annexation could be initiated on the petition of "three-fifths of the taxable inhabitants" of the borough or township seeking annexation. In determining who were "taxable inhabitants," a term not defined in the annexation statute, our Supreme Court held as follows:

> Who is a 'taxable inhabitant'? *Clearly, a taxable inhabitant is one who is, or who may lawfully be, taxed,*—one who possesses all the qualifications necessary to authorize the proper taxing authorities to assess him with a tax. *The assessors' list is the best and readiest evi-*

*dence of this liability to be taxed,* just as the registry list is the best and readiest evidence of the right of a citizen to vote. But neither the assessment roll nor the registry list is conclusive upon the subject to which it relates. A taxable inhabitant or a voter may be overlooked by the enrolling officer. In that event the fact of the right to vote, or of the liability to be taxed, may be shown by other evidence.

*In re Annexation of Chester Township*, 174 Pa. at 180–81, 34 A. at 457 (emphasis added). In short, "taxable inhabitants" are those whose names appear on the "assessors' list" as persons who can be "lawfully taxed." *Id.* Nevertheless, there may be mistakes in that list and, thus, liability for taxation may be shown "by other evidence." *Id.*

Property Owners argue that if the legislature had wanted to restrict "taxable inhabitants" in the Public School Code to "permanent residents," it could have so specified. Likewise, it could have specified that the petitioners had to be "human beings" that were "legally domiciled" at the property that was the subject of a transfer proceeding. The legislature did neither. Because all Property Owners are required to pay real estate taxes to the County, Township and Somerset Area School District, they contend that the signatories to the petition meet the definition of "taxable inhabitants" provided by our Supreme Court in *Annexation of Chester Township*.

The Somerset Area School District rejoins that Property Owners' argument gives too much weight to "taxable" and not enough to "*inhabitants;*" effectively, Property Owners read the term as "taxpayers." The School District urges that the word "inhabitant" must be interpreted according to its ordinary usage, which is a human being who permanently resides in the proposed independent school district.

The School District directs us to the dictionary definition of "inhabitant," which is:

a person who dwells or resides permanently in a place as distinguished from a transient lodger or visitor ... compare CITIZEN, DOMICILE, RESIDENT.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1163 (2002). Under this definition, only Robert M. Hernandez and Annette D. Ganassi qualify as "taxable inhabitants" because only they "reside permanently" in the proposed independent school district.

The Somerset Area School District also argues that *Annexation of Chester Township* is inapposite. It pre-dates the Public School Code by over 50 years and construed a statute dealing with the annexation of a municipality, not the annexation of a school district. The School District suggests that this Court's decision post-remand in *In re: Establishment of Independent School District Consisting of the Borough of Wheatland,* 912 A.2d 903 (Pa. Cmwlth.2006) (*Borough of Wheatland II* ), supports its interpretation that "inhabitant" means a human being who is a "permanent resident."

In *Borough of Wheatland II,* the trial court allowed additional persons to sign the petition to establish an independent school district before conducting its remand hearing. This Court held that this was error because the petition's validity had to be determined as of the date of its filing. We reasoned as follows:

In *Allison Township Annexation,* 4 Lyc. 80 (C.P.Pa.1953), the trial court considered the issue of whether taxable inhabitants should be counted as of the filing of the petition for annexation on March 17, 1952, as of December 31, 1951 *when the assessor was to officially file the list of taxables or as of the time when the list was formally prepared in the commissioner's office.* In concluding that the taxable inhabitants should be determined as of the date of the filing of the petition, the trial court reasoned:

Those who moved from the district before the petition was presented to the council have no proper interest in the proceedings, *whereas those who moved into the district, even after the assessment list was completed, but before the date of presentation to the council, do have a proper interest as to whether or not there should be an annexation. One who pays taxes but moves from the district before the presentation of the petition may be a taxable, but he should not be considered as an inhabitant of the district.*

*Id.* at 89. The Court agrees with the trial court's reasoning in *Allison Township,* and it accordingly holds that the Petitioners' compliance with the procedural requirements under Section 242.1(a) of the Public School Code must be determined as of the date of filing of the Petition.

*Borough of Wheatland II,* 912 A.2d at 908–09 (emphasis added). In other words, we concluded that the official assessment list was not dispositive. A person who moved into the district before the petition was filed would be eligible to participate even though the assessor's list had not been officially updated.

The Supreme Court's definition of taxable inhabitants in *Annexation of Chester Township,* which is quoted with approval in *Borough of Wheatland I* and cited in *Borough of Wheatland II,* is dispositive. After pondering the question of who qualifies as a taxable inhabitant, the Supreme Court answered that "[c]learly, a taxable inhabitant is one who is, or who may lawfully be, taxed." *Annexation of Chester Township,* 174 Pa. at 180, 34 A. at 457. The Court pointed to the tax assessors' list as *"the best and readiest evidence of this liability to be taxed." Id.* (emphasis add-

ed). It concluded that "taxable inhabitants" are persons with a presence by virtue of their liability to pay real estate taxes. By contrast, "visitors," who may be present only long enough to pay a sales tax, may be "taxpayers" but ones without a sufficient presence in the borough to participate in an annexation petition.

The Somerset Area School District asserts that *Annexation of Chester Township* is too aged to be considered. There is no principle that precedent becomes infirm with age. Likewise, the contention that *Annexation of Chester Township* is inapposite because it construed a municipal annexation statute, as opposed to school district annexation, is not persuasive. Annexation is annexation. Further, it is axiomatic that

> [i]n enacting a statute, the legislature is presumed to have been familiar with the law, as it then existed *and the judicial decisions construing it.*

*Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 603 Pa. 452, 476, 985 A.2d 678, 694 (2009) (quoting *Birth Center v. St. Paul Companies, Inc.,* 567 Pa. 386, 404, 787 A.2d 376, 387 (2001)) (emphasis added). We must assume the legislature chose the term "taxable inhabitant" advisedly and with knowledge of the Supreme Court's defini-

tive construction when it placed that term in Section 242.1 of the Public School Code.[7]

*Borough of Wheatland II* does not compel a different result. We quoted *Allison Township Annexation,* 4 Lyc. 80 (C.P.Pa. 1953), for the purpose of deciding whether "taxable inhabitants" are determined as of the time a petition for establishment of an independent school district is filed or sometime later. The Lycoming County Common Pleas Court did not address the meaning of "taxable inhabitants."[8] In *Borough of Wheatland II,* the issue was whether to allow the petition to be amended with new signatures, which exceeded the scope of the remand. It was potentially unfair to the challenger who was then faced with having to develop new evidence. Thus, we held that the validity of the signatures on the petition originally filed with the trial court was the one issue for remand. *Borough of Wheatland II,* 912 A.2d at 909. Notably, in *Borough of Wheatland II,* 912 A.2d at 905, we again cited the definition of taxable inhabitant found in *Annexation of Chester Township.*

Generally, we construe words "according to their common and approved usage." 1 Pa.C.S. § 1903(a). The trial court relied on the dictionary definition. In doing so, it fixed on one of the several definitions, *i.e.,* "permanently residing." In fact, the

---

7. The trial court and the School District cite other sections of the Public School Code that use the term "resident or inhabitant." First, these sections are not relevant because they do not use the specific term "taxable inhabitant" and deal with taxes paid only by an individual, such as the *per capita,* or head, tax. Only human persons have heads. Second, "resident or inhabitant" are not interchangeable, or the legislature would not have used both words. If "resident" signifies a person who is legally domiciled, then "inhabitant" is *not* a person legally domiciled. Somerset Area School District reads the words "resident and inhabitant" as synonyms. This is error because it makes each word redundant of the other. .

This narrow understanding of "resident" is consistent with our holding in *In re: Incorporation of the Borough of Treasure Lake,* 999 A.2d 644 (Pa.Cmwlth.2010). There, we considered a statutory provision that authorized incorporation of a borough where requested by a majority of "freeholders residing." We construed the term "reside" or "residing" as synonymous with legal residence.

8. In any case, the Lycoming County Court of Common Pleas decision is not inconsistent with *Annexation of Chester Township,* which explained that a tax assessor's record might not be accurate and can be updated with evidence.

dictionary explains that an "inhabitant" is someone who "dwells" in the district or is "not a transient." A person may "dwell" in his home only in the summer months. A person, whether a trust or a corporation or a limited liability company, is not a "transient." Further, modern forms of home ownership take different forms. A house, in which human beings dwell, may be owned for estate planning or guardianship reasons by a trust. A corporation may own an apartment building in which many human beings reside. There is no logical or obvious policy reason for excluding a legal person from participation in the establishment of an independent school district. Requiring that the property owner live permanently in a house located in the proposed independent school district will lead to other anomalous results. For example, a 50–acre farm could be divided between two school districts. The owner of the farm could not participate in the transfer proceeding unless his house, not his barn or fields, was located in the proposed independent school district. Defining an "inhabitant" in the narrowest possible terms is not consistent with the language of Section 242.1 and leads to untoward outcomes.

■ *Annexation of Chester Township* teaches that the tax assessor's rolls must be used to identify the taxable inhabitants of a proposed independent school district. Here, all 39 parcels are listed with the Somerset County Assessment Office, and all the petitioning Property Owners pay real property taxes to Somerset County, Jefferson Township and Somerset Area School District. Thus, all 22 Property Owners qualify as "taxable inhabitants" under Section 242.1(a) of the Public School Code and were eligible to sign the petition. The trial court erred in concluding otherwise.[9]

Accordingly, the order of the trial court granting the School District's objections and dismissing Property Owners' petition is reversed.[10] The matter is remanded to the trial court with instructions to forward the petition to the Secretary of Education to evaluate the "merits of the petition . . . from an educational standpoint." 24 P.S. § 2–242.1(a).

President Judge PELLEGRINI did not participate in the decision in this case.

## ORDER

AND NOW, this 9th day of August, 2013, the order of the Court of Common Pleas of Somerset County dated November 16, 2012, in the above captioned matter is hereby REVERSED. The matter is REMANDED to the trial court for purposes consistent with the foregoing opinion.

Jurisdiction relinquished.

**9.** The School District's objection to the petition was that only two of the signatories qualified as taxable inhabitants. The School District has never contended that if all the signatories to the petition qualify as taxable inhabitants they still would not constitute a majority of the territory's taxable inhabitants. Thus, there is no need for the trial court to make a determination on that issue. Further, the parties stipulated that the remaining criteria found in Section 242.1(a) of the Public School Code had been met.

**10.** Based on our disposition of the case on the first issue, we need not reach the second issue of whether the trial court erred in concluding that the real property owned by Hernandez and Ganassi had to be contiguous to Rockwood Area School District to file a petition for the creation of an independent school district even though the remaining 37 parcels were contiguous.